UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:26-cr-80003-DMM

UNITED STATES OF AMERICA

　　　　v.

RONALD ALAN FRANKEL,

　　Defendant.
_____/

### GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE RELEVANT, INEXTRICABLY INTERTWINED AND ALTERNATIVELY, 404(B) EVIDENCE

The government files this notice of intent to introduce evidence at trial pursuant to Federal Rules of Evidence 401, 402, and 404(b).  The evidence detailed below is direct evidence to prove the crimes charged, as well as inextricably intertwined evidence that provides the jury with a complete and accurate understanding of the Defendant's charged criminal conduct.  Alternatively, the evidence is admissible pursuant to Rule 404(b) to prove the Defendant's motive, plan, intent, knowledge, and absence of mistake or accident in the offenses charged in the Indictment.

The evidence the government seeks to admit at trial that are subject to this motion are:

1) 　　search terms found on the defendant's phone before and after the charged crime;

2) 　　a text conversation before the charged crime between the defendant and an unknown person regarding an unknown 17-year-old girl; and

3) 　　after the defendant was arrested, numerous videos and photographs were found on the defendant's phone of unidentified females performing sex acts or posing nude, many of which involve females whose age is difficult to ascertain—it is hard to tell whether they are minors or young adults based merely on the physical features shown in the photos and videos.

The government's position is that the evidence listed above  is direct, relevant, and admissible evidence that helps prove the charged offense; in the event the Court rules against that position, the government would then argue that the evidence is 404(b) evidence and hereby files

this notice and argument to comply with relevant 404(b) rules.[1]

## I.  Procedural Background

On July 10, 2025, the defendant was charged by criminal complaint with one count of transportation of a minor with intent to engage in criminal sexual activity, in violation of Title 18, United States Code, Section 2423(a).  After the court granted several continuances requested by the parties in order to seek a pretrial resolution, the defendant was charged by Indictment on January 8, 2026 with the same charge as the complaint.  Trial is currently set for the week beginning February 23, 2026.

## II.  Factual summary

The following is a brief summary of the case that is not intended to detail all the facts or evidence to be used at trial by the government, but is rather intended to sufficiently inform the Court in order to rule on this motion.

On or about February 10, 2025, a complainant contacted the FBI to report her minor daughter (hereinafter "the Minor Victim"), had been paid by an adult male named RON FRANKEL, who lived in Delray Beach, Florida, to travel to Delray Beach and engage in sex acts with FRANKEL.

On February 18, 2025, the FBI conducted a Child and Adolescent Forensic Interview (CAFI) with the Minor Victim. During the CAFI, the Minor Victim explained she had been looking for a "sugar daddy" and met FRANKEL on Tinder.[2] FRANKEL's relationship with the Minor Victim began by the two conducting FaceTime video calls multiple times a week while the Minor

---

[1] There could be other evidence that defense counsel finds objectionable. The purpose of this motion is not to litigate all evidentiary issue before the trial; rather the government's intent is to comply with 404(b) notice rules in the event the Court were to find that Rule 404(b) applies as to these pieces of evidence.

[2] Tinder is an online networking application often used for finding sexual and/or romantic partners.

Victim was nude. FRANKEL paid about $200.00 to $300.00 USD per video session via Venmo.[3] FRANKEL told the Minor Victim he would pay more money if the Minor Victim masturbated. One time, FRANKEL requested the Minor Victim to masturbate by using a hairbrush and instructed the Minor Victim on how to pose for the video. It was clear to the Minor Victim that FRANKEL was masturbating during the video calls.

After multiple FaceTime calls, FRANKEL sent the Minor Victim approximately $1,000.00 USD via Venmo for a plane ticket to Florida. An extraction of the Minor Victim's telephone indicates a money transfer of $1,000.00 USD was sent from FRANKEL to the Minor Victim on January 21, 2025. The Minor Victim booked the ticket via Priceline.com with her own debit card and, told the Minor Victim's mother she would be traveling to Florida with her friends.

Records obtained from Priceline show ticketed travel for the Minor Victim on January 31, 2025 from Des Moines International Airport (DSM) in Des Moines, Iowa, to Fort Lauderdale-Hollywood International Airport (FLL) in Fort Lauderdale, Florida. The records also show a ticketed return flight for the Minor Victim on February 2, 2025 from FLL to DSM.

At some point during their communications, prior to traveling to Florida, the Minor Victim sent FRANKEL a doctored driver's license, part of which altered her birthdate so that the birthdate indicated she was 18 years old. Another portion of the driver's license was not altered and showed that the Victim was 17 years old ("under 21 until" date). [4]

The Minor Victim reported she landed in Florida and was picked up by a black Cadillac arranged by FRANKEL, which brought her to FRANKEL's residence inside a gated community,

---

[3] Venmo is a mobile payment service that allows users to send and receive funds via a mobile phone application.

[4] Under 18 U.S.C. § 2423(a), the government does not have to prove that the defendant knew that the victim was under the age of 18. *United States v. Cox*, 577 F.3d 833, 836 (7th Cir. 2009). This issue was briefed by the government in docket entries 31 and 33.

3

where she met him. Upon arrival to FRANKEL's residence, FRANKEL asked the Minor Victim if she wanted to shower with FRANKEL or get in the hot tub. Minor Victim swam in the hot tub and/or pool, where FRANKEL removed the Minor Victim's bottoms and performed oral sex on the Minor Victim. Then, the Minor Victim performed oral sex on FRANKEL. FRANKEL told the Minor Victim, "If you don't say no, I won't say no." The Minor Victim interpreted this statement to believe FRANKEL would pay the Minor Victim or purchase items for the Minor Victim as long as she did not decline FRANKEL's sexual requests. The Minor Victim then went to bed, and, in an attempt to prevent as many sexual encounters with FRANKEL as possible, informed FRANKEL she slept in very late into the morning.

The Minor Victim explained she slept in a separate room from FRANKEL in FRANKEL's residence. The next day, FRANKEL began texting the Minor Victim. FRANKEL knocked on the Minor Victim's door and they went downstairs for breakfast.

An extraction of the Minor Victim's telephone shows the following text conversation on February 1, 2025 between FRANKEL's telephone number, \*\*\*-\*\*\*-7663, and the Minor Victim:

Minor Victim: "Just woke up"

FRANKEL: "I am down stairs. Let me know when to come in your room".

The Minor Victim explained after the two had breakfast, FRANKEL and the Minor Victim went upstairs and had vaginal intercourse in a different bedroom. Immediately after the sexual encounter, FRANKEL sent the Minor Victim $3,000.00 USD via Venmo. An extraction of the Minor Victim's telephone indicates a money transfer of $3,000.00 USD was sent from FRANKEL to the Minor Victim on February 1, 2025.

The Minor Victim told the CAFI that later the same day, FRANKEL drove the Minor Victim in a Lamborghini to a nail salon and the mall in Boca Raton. FRANKEL purchased a

diamond necklace and bracelet, a MacBook, AirPods, and clothing from Lululemon and Alo for the Minor Victim. Records obtained from jewelry store Gorjana and Apple Inc. confirmed these purchases. FRANKEL and the Minor Victim then returned to FRANKEL's residence, where they engaged in vaginal intercourse again.

The morning of February 2, 2025, FRANKEL and the Minor Victim had vaginal intercourse. During this sexual encounter, FRANKEL stopped and told the Minor Victim he would give her "something extra" for trying "something new." FRANKEL then moved the Minor Victim to a prone position and had anal intercourse with the Minor Victim. The Minor Victim began crying and asked FRANKEL to stop. FRANKEL held the Minor Victim down, told the Minor Victim to "just breathe," and continued. FRANKEL stopped the intercourse when the Minor Victim asked a second time. Immediately after the sexual encounter, FRANKEL gave the Minor Victim $1,000 USD cash.

FRANKEL asked the Minor Victim multiple times if she had any friends she could introduce who FRANKEL could pay for sex.

Later, FRANKEL ordered the Minor Victim a car to take her back to the airport, and the Minor Victim flew back to Des Moines, Iowa on February 2, 2025.

Text message records show the following conversation on February 4, 2025 between the Minor Victim and FRANKEL's telephone number, ***-***-7663, amid a conversation about the Minor Victim's spring break plans:

FRANKEL: "none of your friends want to go [to] Florida"

Minor Victim: "probably not"

Minor Victim: "they don't want to"

…

FRANKEL: "wow"

…

Minor Victim: "Well that's their choice. I only told a few of them what I'm doing and they don't wanna do it and I'm not gonna pressure them either"

FRANKEL: "did you share about the $$$$"

An extraction of the Minor Victim's telephone shows the following search terms were entered on the Minor Victim's device on the listed dates:

January 24, 2025: "[FRANKEL's home address in] Delray Beach florida 33446"

January 30, 2025: "mall near [FRANKEL's home address in] Delray Beach florida 33446"

February 3, 2025: "i was anally raped"

February 3, 2025: "i was raped and can't tell anyone"

February 11, 2025: "ron frankel court records"

In Florida, a person 24 years of age or older who engages in sexual activity with a person 16 or 17 years of age commits a felony of the second degree. Fla. Stat. § 794.05(1). FRANKEL was born in October 1956 and was 68 when the Minor Victim traveled from Iowa and engaged in sexual activity with him. The Minor Victim was 17 years old.

An extraction of one of the defendant's smart phones revealed the following search terms, among others (**evidence issue #1**)[5]:

---

[5] Defense may argue that some of these search terms (such as the ones from the TikTok app) are not search terms inputted but the defendant, but rather suggested search terms created but an algorithm from the app. Regardless, the government is seeking their admission.

| Time | Search |
|---|---|
| 1/28/2024 8:50:56 PM(UTC...) | 16years old in swimsuit |
| 1/28/2024 8:50:49 PM(UTC...) | swimsuits 16years old in swimsuit |
| 1/28/2024 8:50:39 PM(UTC...) | swimsuits 16years old |
| 1/28/2024 8:49:56 PM(UTC...) | 16 am i pretty |
| 1/28/2024 8:49:51 PM(UTC...) | 16 is such a pretty age |
| 1/28/2024 8:49:36 PM(UTC...) | finest 16 years olds |
| 1/28/2024 8:49:29 PM(UTC...) | finest 15 years olds girls |
| 1/28/2024 8:49:20 PM(UTC...) | girls 15 years dancing |
| 1/28/2024 8:49:11 PM(UTC...) | 15 years ago girls highschool |
| 1/28/2024 8:48:45 PM(UTC...) | 15 year girl |
| 1/28/2024 8:48:31 PM(UTC...) | 15 year country girl |
| 1/28/2024 8:48:24 PM(UTC...) | country 13 years ago girl who wants attention |
| 1/28/2024 8:47:53 PM(UTC...) | 13 years ago girl who wants attention |

| # | Search |
|---|---|
| 1576 | crying anal.porn teen |
| 1787 | 18 petite first porn |
| 1788 | 18 year old petite first porn |
| 1789 | 18 year old first porn |
| 1790 | teen first porn |
| 1791 | rape porn |
| 1792 | crying |
| 1873 | thin 18 petite porn |
| 1874 | petite 18 porn |
| 1875 | petite teen anal.porn |
| 1876 | ceying anal porn |

Other search terms found on the Defendant's phone included: "highschool babes", "petite first porn", "cute high school cheerleaders", "rape during war", "serbian rapes", "miss teen

7

colorado porn", "casting teen porn", "young teen anal", "first hand accounts of human trafficking", "Consent age in MA and RI drops to 14", "how to transfer photos to hidden album", and numerous other similar search terms.

There is a text conversation that occurred between October 19, 2024 and October 21, 2024, between the defendant and an unidentified individual who is likely an adult female (**evidence issue #2**).

| | |
|---|---|
| Unknown person: | change of plans my cousin is staying the night with me tonight so i won't be able to call you today i'm sorry |
| Defendant: | disappointed |
| Defendant: | is your cousin a girl? |
| Unknown person: | yeah she's visiting from out of town for the weekend. i should probably be free tomorrow to call you so sorry |
| Defendant: | how old is your cousin |
| Unknown person: | she's 17 |
| Defendant: | she could not be nude but I could pay you both for sexy facetime |
| Unknown person: | let me ask |
| Unknown person: | she has a boyfriend so she doesn't think she should or else he will get upset |
| Defendant: | do not tell him lol. 200 each. 15 minutes. you nude she is bra and pants |
| Defendant: | panties |
| Unknown person: | i don't think she wants to but if i have a chance later to call u i will |
| . . . | |
| Defendant: | one time offer.  500 each. she does what I tell her to do |
| Unknown person; | what if it's me and [female name]? |

8

| | |
|---|---|
| Defendant: | no. that is 200 |
| Defendant: | just want your cousin to do it |
| Unknown person: | okay fine. let me try to convince her one last time but she is pretty stubborn about her boyfriend so it will most likely not work out |
| Defendant: | he will never know. I will pay 1000 total. give her more then 500 it will be worth your while |
| Unknown person: | ok i'm down but let me try and convince her. she's pretty stubborn lol |
| Defendant: | send me her picture |
| Unknown person: | this is her but she just realized she forgot to pack some things so she's leaving me to go back to her hotel :/ [photo attached] |

The conversation eventually leads to a FaceTime call between the defendant and the unknown person, after which the defendant sends money to the unknown person.

The extraction of one of the defendant's smart phones also revealed numerous photos and videos of unidentified females performing sex acts or posing nude, many of which involve females whose age is difficult to ascertain. That is to say they are "age difficult"—it is hard to tell whether they are minors or young adults based merely on the physical features shown in the photos and videos **(evidence issue #3)**.

### III. Legal Standards

#### A) Jury Instructions[6]

According to 11th Circuit Pattern Jury Instruction O93.1:

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

---

[6] This pleading is not intended to be the government's proposed jury instructions for the trial. The government will submit proposed jury instructions in a separate pleading.

9

    (1)    the Defendant knowingly transported the person named in indictment in interstate commerce;

    (2)    at the time of the transportation, the person named in indictment was less than 18 years old; and

    (3)    at the time of the transportation, Defendant intended that the person named in the indictment would engage in prostitution or other unlawful sexual activity.

11th Circuit Pattern Jury Instruction O93.1  It is not necessary for the Government to prove anyone actually engaged in illegal sexual activity after being transported across state lines. The Government must prove beyond a reasonable doubt that a person under 18 years old was knowingly transported across state lines by the Defendant and that the Defendant intended at the time for the person under 18 to engage in prostitution or other illegal sexual activity. *Id.*

The Government must prove that if the intended sexual activity had occurred, the Defendant could have been charged with a criminal offense under the laws of Florida. *Id.*

Under Florida law Under Florida law, a person 24 years of age or older who engages in sexual activity with a person 16 or 17 years of age commits a felony of the second degree. Fla. Stat. § 794.05(1).

As used in this instruction, the term "prostitution" means engaging in or agreeing or offering to engage in any lewd act with or for another person in exchange for money or other consideration. 11th Circuit Pattern Jury Instruction O93.1

To "transport in interstate commerce" means to move or carry someone, or cause someone to be moved or carried, from one state to another. The term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States. It is not necessary to show that the Defendant knew that state lines were being crossed, but

the Government must prove that state lines were crossed. 11th Circuit Pattern Jury Instruction O93.1.

Finally, as noted in the annotations, under 18 U.S.C. § 2423(a), the government does not have to prove that the defendant knew that the victim was under the age of 18. *United States v. Cox*, 577 F.3d 833, 836 (7th Cir. 2009).[7]

**B)    Direct and inextricably intertwined evidence**

Federal Rule of Evidence 402 provides that "all relevant evidence is admissible…" Fed. R. Evid. 402. Relevant evidence is defined in Rule 401 as, "[evidence that] has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. In sum, the Rule asks whether the evidence being introduced has a "tendency to make the existence" of a fact to be proved "more probable or less probable." Advisory Committee Notes Fed. R. Evid. 401. Thus, relevant evidence should be admitted unless its "probative value is substantially outweighed by a danger of… unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Moreover, evidence of other acts is not extrinsic and not subject to Rule 404(b) if it: (1) arose out of the same transaction as the charged offense; (2) is necessary to complete the story of the crime; or (3) is inextricably linked with the charged offense. *United States v. Ellisor*, 522 F.3d 1255, 1269 (11th Cir. 2008) (quoting *United States v. Jiminez*, 224 F. 3d 1243, 1249 (11th Cir. 2000)). It is axiomatic that "[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an

---

[7] This issue was briefed by the government in docket entries 31 and 33.

account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. McClean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)); *see also United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (holding that "evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses to which the defendant was indicted.'" (quoting *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989)).

Moreover, the United States is "not required to provide notice of intrinsic evidence." *United States v. Thanh Quoc Hoang*, 560 F. App'x 849, 853 (11th Cir. 2014) ("Hoang complains that he was not notified before the evidence was introduced at trial, but the government was not required to provide notice of intrinsic evidence."); *see also United States v. U.S. Infrastructure, Inc.,* 576 F.3d 12195, 1210 (11th Cir. 2009); *United States v. Leavitt*, 878 F.2d 1329, 1339 (11th Cir. 1989) ("Since these acts are not 404(b) evidence, the government was not required to give the defendants notice of their intention to use them.").

### C)    404(b) Evidence of Other Crimes, Wrongs, or Acts

Pursuant to Federal Rule of Evidence 404(b), while "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)-(2). Courts in this Circuit apply a three-prong test to assess the admissibility of evidence under Rule 404(b):

> First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act. Third, the evidence must possess probative value that is not substantially

> outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

*United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003), *abrogated on other grounds by Rehaif v. United States*, 139 S. Ct. 2191 (2019).

The Eleventh Circuit has recognized that Rule 404(b) is "a rule of inclusion, and . . . accordingly '404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case.'" *Id.* (quoting *United States v. Perez-Tosta*, 36 F.3d 1552, 1562 (11th Cir. 1994)); *see also United States v. Stephens*, 365 F.3d 967, 975 (11th Cir. 2004)). Rule 404(b) is a rule "of inclusion which allows [extrinsic] evidence unless it tends to only prove criminal propensity. The list provided by the rule is not exhaustive and the range of relevancy outside the ban is almost infinite." *Stephens*, 365 F.3d at 975 (quoting *United States v. Cohen*, 888 F.2d 770, 776 (11th Cir. 1989) (internal quotations omitted)). "A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998). ("The relevance of other crimes evidence to intent is determined by comparing the defendant's state of mind in committing both the extrinsic and charged offenses."). Finally, as with any evidence, the probative value of proffered 404(b) evidence must not be *substantially outweighed* by unfair prejudice. *Jernigan*, 341 F.3d at 1282 (internal quotations omitted) (emphasis in original). "This determination lies within the sound discretion of the district judge and calls for a commonsense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *Id.*

13

### IV. <u>Analysis</u>

The evidence the government seeks to admit at trial that are subject to this motion are:

1) search terms found on the defendant's phone before and after the charged crime;

2) a text conversation before the charged crime between the defendant and an unknown person regarding an unknown 17-year-old girl; and

3) after the defendant was arrested, numerous videos and photographs were found on the defendant's phone of unidentified females performing sex acts or posing nude, many of which involve females whose age is difficult to ascertain—it is hard to tell whether they are minors or young adults based merely on the physical features shown in the photos and videos.

The government's primary position is that these pieces of evidence are relevant, direct, inextricably intertwined evidence that are admissible at trial. Each piece of evidence has a "tendency to make the existence" of a fact to be proved "more probable," that is, that the defendant in fact transported the victim to Florida, and that at the time of the transportation of the minor, the Defendant intended that the victim would engage in prostitution or other unlawful sexual activity. Each piece of evidence pertains to the chain of events explaining the context, motive and set-up of transporting the victim to Florida. Each piece of evidence is linked in time and circumstances with the charged crime, forms an integral and natural part of an account of the crime, and is necessary to complete the story of the crime for the jury. *United States v. McClean*, 138 F.3d 1398, 1403 (11th Cir. 1998).

If the defendant's phone were full of only photos of his family and pets and vacations, the jury could infer that perhaps this defendant did not commit this crime, and in fact, defense would argue that relentlessly. Instead, the defendant's search terms, the text conversation about the 17-year-old, and the sexually explicit images and videos of minors in the Defendant's cell phone show that the charged conduct was not the result of a misunderstanding, or a frame job by an angry teenager and her mother, but rather was the result of the Defendant's premeditated plan to satisfy

his sexual interest in young women and girls. This evidence shows that the defendant has a motive, plan, and knowledge of how to prepare to seek out young women and girls in order to pay them for sexual acts. The evidence shows the context in which the defendant seeks to satisfy this motive (through online platforms), and it shows how he set up the relationship with the victim. Each piece of evidence is relevant to show that the Defendant committed the charged offense with the requisite *mens rea*, not that the charges are the result of a mistake. Withholding this evidence from the jury would cut out much of the story that explains the defendant's intent and motive in transporting the victim in this case.

As such, the government submits that all three pieces of evidence are relevant and inextricably intertwined with the charged offense. Relevant evidence should be admitted unless its "probative value is substantially outweighed by a danger of… unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The government submits that the probative value of each piece of evidence is not substantially outweighed by a danger of **unfair** prejudice. The Eleventh Circuit has approved the admissibility of evidence in cases involving far more egregious uncharged conduct. For example, in *United States v. Williams,* the court affirmed the defendant's assault convictions after the district court admitted Rule 404(b) evidence during trial that he previously had raped two women. 816 F.2d 1527, 1529 (1987). The court held that the extrinsic evidence was not unfairly prejudicial because the government, having only the assault victims' testimony, lacked strong evidence of intent, and the details of the rapes and the defendant's requisite state of mind were so similar to the assaults. *Id.* at 1532. In conducting its Rule 403 analysis, the court rejected the claim that the rapes were "of such a heinous nature that they [were] likely to sway the jury irrevocably to a decision of guilt," despite the fact that the extrinsic conduct was more

egregious than the charged conduct. *Id.* at 1532. In this case, the search terms, photos and videos, and text conversation are all less egregious than the charged conduct.

If the Court disagrees with the government's position that this evidence is relevant, direct, inextricably intertwined evidence, the government's position is they are admissible under Rule 404(b). Applying the Eleventh Circuit's three-pronged test for admissibility under Rule 404(b), we first look to whether the evidence is "relevant to an issue other than the defendant's character." *Jernigan*, 341 F.3d at 1280. The government's explanation of relevance is explained above, and all if it relates to issues in the jury instructions that are not related to the defendant's character.

Second, there is sufficient admissible evidence that the defendant himself is the one that 1) the search terms occurred on the defendant's phone, 2) communicated about the 17-year-old and 3) possessed the images and videos in his phone. *Jernigan*, 341 F.3d at 1280. All three pieces of evidence were obtained from the defendant's phone at his house. The extraction of the phone clearly shows the phone belongs to the defendant and the government does not expect there to be a disagreement that he was the user of this phone.

And third, the probative value of the evidence is not "*substantially outweighed*" by unfair prejudice." *United States v. Calderon*, 127 F.3d 1314, 1332 (11th Cir. 1997) (emphasis in original). Rule 403 is "an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) (citation and internal quotations omitted). "To determine whether the evidence is more probative than prejudicial, a district court must engage in a commonsense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *United States v. Brown*, 587 F.3d 1082, 1091 (11th Cir. 2009). Again, the Eleventh Circuit has

approved the admissibility of evidence in cases involving far more egregious uncharged conduct. As noted above, for example, in *United States v. Williams,* the court affirmed the defendant's assault convictions after the district court admitted Rule 404(b) evidence during trial that he previously had raped two women. 816 F.2d 1527, 1529 (1987) (see above explanation). The proposed evidence in this case is related to the same exact type of conduct charged in the Indictment. It is not as if the government is seeking to introduce totally unrelated conduct. Rather, the evidence points towards the defendant's motive for transporting the victim to Florida. As such, the government submits that the proposed evidence is not substantially outweighed but unfair prejudice.

Finally, the Eleventh Circuit has crafted a limiting instruction that is designed to ensure that the jury is informed of the limited purpose for which Rule 404(b) evidence is admitted, both at the time the evidence is admitted and at the close of the case. *See* Eleventh Circuit Pattern Jury Instructions, T1.1 (end of trial instruction), Eleventh Circuit Pattern Jury Instructions, S4.1 (end of trial instruction). The government would have no objection to the Court giving this limiting instruction at the time that these messages are admitted, as well as at the end of the case. To the extent that there is a risk of unfair prejudice from admitting this evidence, any prejudice that could arise from admitting the uncharged evidence will be mitigated by a limiting instruction. *See United States v. McNair*, 605 F.3d 1152, 1204 (11th Cir. 2010) (explaining that limiting instructions can mitigate risk of unfair prejudice from admission of Rule 404(b) evidence).

                Respectfully submitted,
                JASON A. REDING QUINONES
                UNITED STATES ATTORNEY

By:   /s/ *Marton Gyires*
       Marton Gyires
       Assistant United States Attorney
       Court ID No.: A5501696
       U.S. Attorney's Office - SDFL
       Marton.Gyires@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I filed the foregoing document with the Clerk of the Court through CM/ECF, which will transmit notification to all parties of record.

<u>/s/ *Marton Gyires*            </u>
Marton Gyires
Assistant United States Attorney