UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-CR-80003-MIDDLEBROOKS/MATTHEWMAN

UNITED STATES OF AMERICA

vs.

RONALD ALAN FRANKEL
_____/

**RONALD ALAN FRANKEL'S MOTION FOR JUDGMENT OF ACQUITTAL**

Ron Frankel respectfully moves this Court pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal.

**ARGUMENT**

**I.    BECAUSE THE STATUTE CRIMINALIZES ONLY TRANSPORTATION AND NOT CAUSATION, THE COURT SOHULD ENTER JUDGMENT OF ACQUITTAL FOR RON FRANKEL, WHO DID NOT TRANSPORT ANYONE.**

The government failed to prove an essential element of 18 U.S.C. § 2423(a): that the defendant ***transported*** a minor in interstate commerce. The government conceded at trial that its theory rested entirely on causation — that Mr. Frankel ***caused*** the complaining witness to travel — not that he personally transported anyone. That concession is fatal to conviction. Section 2423(a) does not criminalize *causing* transportation; it criminalizes transportation itself. A companion statute, 18 U.S.C. § 2422, addresses causation, and if there is any doubt, the rule of lenity requires that § 2423(a) be read no more broadly than its text permits.

### A. The Government Conceded it Could Not Prove Actual Transportation, and Causation is Not an Element of § 2423(a).

Section 2423(a) provides that "[a] person who knowingly **_transports_** an individual who has not attained the age of 18 years in interstate or foreign commerce . . . with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life." 18 U.S.C. § 2423(a) (emphasis added). The operative verb is "transports." The statute does not say "transports or causes to be transported." It does not say "arranges transportation." It does not say "facilitates transportation." Congress chose a single, active verb: transports. As the Supreme Court has reiterated, courts must "give effect, if possible, to every clause and word of a statute" and resist the urge to supplement statutory text with words not enacted. *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (internal quotations omitted). Where Congress has used a particular word and not others, that choice is presumed intentional. *See Russello v. United States*, 464 U.S. 16, 23 (1983).

Here, the government acknowledged at trial that it was not proceeding on a theory of direct transportation. It conceded that Mr. Frankel did not personally drive, accompany, or physically convey the minor across state lines. The government's theory was that Mr. Frankel *caused* the complainant to be transported. That is not what § 2423(a) says. A judgment of acquittal is required.

### B. Congress Assigned Causation Theories to § 2422, not § 2423(a).

The statutory structure of Chapter 117 confirms this reading. Section 2422 —

the provision immediately preceding § 2423 — explicitly reaches those who cause interstate travel to occur. Section 2422(a) criminalizes whoever "knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce . . . to engage in prostitution." Section 2422(b) separately targets whoever "uses the mail or any facility or means of interstate or foreign commerce . . . to persuade, induce, entice, or coerce any individual who has not attained the age of 18 years." Both provisions are built on verbs of causation and inducement: persuades, induces, entices, coerces.

Section 2423(a), by contrast, is built on a verb of direct action: transports. These are adjacent, carefully crafted provisions. The fair inference from Congress's use of causation language in § 2422 and its omission from § 2423(a) is that § 2422 was intended to address those who cause minors to travel — and § 2423(a) was intended to address those who do the transporting themselves. *See Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 80 (2002) ("the canon *expressio unius est exclusio alterius*" supports giving effect to the difference in statutory language across neighboring provisions). To read "transports" in § 2423(a) to encompass causation would render the causation language of § 2422 partially superfluous as applied to minors — a result courts should avoid. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

The First Circuit's treatment of this precise issue confirms that "transports" in § 2423(a) and related statutes does not independently encompass causation. In *United States v. Sabatino*, 943 F.2d 94 (1st Cir. 1991), the district court removed the

word "caused" from the jury instructions on the transportation count, implicitly recognizing that the statute's text does not reach causation as a standalone theory. In *United States v. Footman*, 215 F.3d 145 (1st Cir. 2000), the First Circuit explained that § 2423 does not criminalize causation. That said, it upheld a causation-inflected jury instruction only because aiding and abetting under 18 U.S.C. § 2 was also properly charged and instructed — meaning the causation language derived not from "transports" itself but from § 2's independent authorization to hold liable one who "causes" a federal offense to be committed. *Footman* thus does not establish that "transports" alone covers causation; it establishes that § 2 can fill that gap when there is a guilty principal to aid and abet.

That gap cannot be filled here. Section 2 aiding and abetting requires a guilty principal — someone who themselves committed the substantive offense. The only candidate the government can offer is the minor herself, who booked the travel, selected the itinerary, and crossed state lines. But the minor is the *protected party* under § 2423(a), not its perpetrator. She cannot be both the victim of the offense and the criminal principal whose transportation Mr. Frankel aided and abetted. There is no guilty principal. Without one, § 2 provides no foothold, the causation instruction finds no statutory home, and the government is left with a theory of liability that neither § 2423(a)'s text nor any cognizable theory of accomplice liability supports.

### C. The Rule of Lenity Requires the Narrower Reading.

Even if the Court were to view the scope of "transports" as genuinely ambiguous — a concession we do not make — that ambiguity must be resolved in Mr.

Frankel's favor. Under the rule of lenity, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v. United States*, 401 U.S. 808, 812 (1971). The rule exists precisely to ensure that criminal liability is defined by the legislature, not expanded by courts. *United States v. Santos*, 553 U.S. 507, 514 (2008) (Scalia, J.) ("the tie must go to the defendant").

If "transports" is ambiguous between (a) physically transporting someone and (b) causing someone to be transported, the narrower construction must prevail. That construction limits § 2423(a) to actual transporters and leaves the causation theories where Congress placed them: in § 2422. Because the government's evidence at trial was directed entirely at the broader, textually unsupported construction, it did not prove every element of the offense beyond a reasonable doubt. Judgment of acquittal is required.

## II.   EVEN IF CAUSATION SUFFICES UNDER § 2423(a), THE GOVERNMENT FAILED TO PROVE THAT RON FRANKEL CAUSED THE TRAVEL.

Mr. Frankel's primary argument is that 18 U.S.C. § 2423(a)'s verb "transports" does not encompass causing transportation — and that the government's conceded failure to prove direct transportation is therefore fatal to its case. Even if a causation theory were legally cognizable under § 2423(a), the government did not prove beyond a reasonable doubt that Mr. Frankel caused the minor's travel. The undisputed evidence at trial established that the minor — not Mr. Frankel — was the driving force behind every material decision that led to her crossing state lines. Her own deliberate, independent, and repeatedly deceptive conduct was not merely a

contributing factor; it was the but-for cause of her travel. Under any serious causation analysis, the causal chain between Mr. Frankel's conduct and the interstate journey was severed by the minor's autonomous choices.

### A. Causation Under Federal Criminal Law Requires Both But-For and Proximate Causation.

When a federal criminal statute requires that a defendant's conduct produce a specified result — here, interstate transportation — "a defendant generally may not be convicted unless his conduct is both (1) the actual cause, and (2) the 'legal' cause (often called the 'proximate cause') of the result." *Burrage v. United States*, 571 U.S. 204, 210 (2014) (quoting 1 W. LaFave, Substantive Criminal Law § 6.4(a)). Actual (or "but-for") cause asks whether the result would have occurred absent the defendant's conduct. Proximate cause asks whether the defendant's conduct was sufficiently close and direct — not merely a background condition — to justify imposing criminal responsibility.

The Supreme Court in *Burrage* rejected the government's attempt to substitute a "contributing cause" standard for the demanding but-for inquiry. The Court held that a defendant cannot be held criminally liable unless his conduct was an independently sufficient cause — "the straw that broke the camel's back" — not merely one factor among many. 571 U.S. at 211. The same principle applies here: contributing $1,000 toward a trip that an autonomous individual independently decided to take, booked herself, scheduled herself, could afford herself, and would have taken regardless of where the money came from does not satisfy but-for causation, let alone proximate causation.

Moreover, where a "free, deliberate, and informed" intervening act by a third party — or the purported victim herself — follows the defendant's conduct, that intervening act severs the causal chain. *See* H.L.A. Hart & A.M. Honoré, Causation in the Law 326 (2d ed. 1985) ("The free, deliberate, and informed intervention of a second person, who intends to exploit the situation created by the first, but is not acting in concert with him, is normally held to relieve the first actor of criminal responsibility."); Sanford H. Kadish, Complicity, Cause and Blame: A Study in the Interpretation of Doctrine, 73 Cal. L. Rev. 323, 391 (1985) (Under the common law, volitional actions "are seen not as caused happenings, but as the product of the actor's self-determined choices, so that it is the actor who is the cause of what he does, not [the individual] who set the stage for his action.").   The victim's own autonomous choices are the paradigmatic example of a superseding cause: they are independent of the defendant's conduct, they are deliberate, and they are sufficient by themselves to bring about the result. *See also* Restatement (Second) of Torts § 440 (superseding cause is one that by its intervention renders the original defendant's act "no longer a proximate cause").

### B. The Complaining Witness — Not Ron Frankel — Was the But-For Cause of Her Own Travel.

The facts adduced at trial, viewed in their totality, establish that the complaining witness made a series of free, deliberate, and informed choices that were the actual cause of her interstate travel. Those choices were not the foreseeable consequence of anything Mr. Frankel did; they were independent acts of autonomous decision-making by a person who wanted to go and went.

The minor lied about her age on Tinder, representing herself as eighteen when she was seventeen. She lied again to Mr. Frankel when they spoke directly. She affirmatively procured a fraudulent identification document displaying a false date of birth and presented it to him. She deceived her own mother about her travel plans. She personally researched and selected the flight. She chose the departure and return times and dates. She booked the ticket herself. And when her own friend — someone who knew the truth — told her not to go, she responded, in her own words: "YOLO." Govt. Exhibit 3 at 6.

The story of how the complaining witness came to board a plane to Florida is, by her own testimony, a story she wrote herself — from the first keystroke to the last boarding pass.

It began with a deliberate lie. The complaining witness created her Tinder profile, falsely verifying she was over 18, knowing full well she was 17 years old. When the application asked for her age, she tried entering her real birthday first: "I first tried to put in my fake age — excuse me, my real age which would be 17. Then I put in that I was 18 and it let me in." (Tr. 45.) She chose a false name — Scarlet — to protect her identity, posted photographs chosen to make her look older, told Tinder she was in college, and set her preferences to match with men between 35 and 75 years old anywhere in the United States. She selected "presents" as her love language and "short term fun" as what she was seeking. (Tr. 43–44.) She was, as she acknowledged without hesitation, looking for a sugar daddy. (Tr. 41.) Every one of those choices was hers: "Pretty much everything that happened you decided to do,

right? Yes." (Tr. 46.)

When Ron Frankel appeared on her screen and the two matched, she messaged him first. (Tr. 47.) She kept talking to him for weeks, making money through FaceTime sessions, never once blocking him or "ghosting" him — tools she knew how to use and chose not to deploy. (Tr. 61.) When the prospect of an in-person meeting arose, she did not say no. She said: let's meet in Minneapolis instead — at the Mall of America, where she wanted to shop. (Tr. 60.) She had agency and she used it to negotiate, not to walk away.

When Frankel asked her age, she lied again — directly, this time, person to person. (Tr. 65.) When he then asked for a photo of her driver's license, she did not tell him the truth. She did not end the arrangement. Instead, she spent hours on Google searching "how do I create a fake driver's license," "driver's license Iowa vertical," "how to edit driver's license on iPhone," "online photo shop services," and "how do I make a fake driver's license." (Tr. 71–72.) Using the results of those searches, she doctored her own Iowa driver's license — changing the year of her birth — and deliberately blurred the image before sending it so that its flaws would be harder to detect. (Tr. 73.) She even previewed the fake ID to her friend Anna, who noted it wasn't good enough to buy alcohol. The complaining witness's response: "No, it is to show my sugar daddy that I am 18." (Tr. 73.) She knew exactly what she was doing and why. She knew that if she simply declined to send a license, "he would assume I was 17" and "that would have ended everything." (Tr. 73.) Given that choice, she chose to fabricate government identification.

She then booked the flights herself — and did so deliberately, for her own reasons. Frankel offered to book the ticket for her. She refused to let him, because doing so would have required providing her real date of birth. (Tr. 65–66.) But there was a second reason, one she volunteered: "I wanted to book the flight so I could choose which times to go and which times I could leave." (Tr. 10.) She selected the latest possible departure time and the earliest possible return. (Tr. 10.) She picked the dates — pushing the trip to January 31st, over Frankel's suggestions of an earlier weekend, because waiting allowed her to keep earning money through FaceTime calls in the interim and then collect the larger sum all at once. (Tr. 64–65.) When she could not remember why the flight did not cost the full $1,000 Frankel sent, she acknowledged the obvious: the difference was hers to keep and she kept it. (Tr. 77.)

To get out of the house, she lied to her mother — telling her she was visiting a friend, that the tickets were already paid for with money she had earned herself, and that she would be staying with the aunt and uncle of a friend. (Tr. 69-70.) None of it was true. She did this because, as she testified without qualification, her mother "would never have let" her go. (Tr. 69.)

The moment that strips the government's causation theory of any remaining force came when the complaining witness shared a screenshot of Frankel's $1,000 Venmo transfer with her friend Anna. Anna's response was unambiguous: take the money, keep it, find a new sugar daddy, walk away. The complaining witness's response was equally unambiguous: "Nah, YOLO." (Tr. 77.) Asked what that meant, she said: "You only live once." (Tr. 78.) Asked whether she understood she had the

option not to go, she said yes. (Tr. 78.) Asked whether anything Anna could have said would have stopped her, she said: "At that moment, yes." (Tr. 78.) Asked directly, "Even though you were presented with an option not to go, you chose to go, you were going to go?" she answered: "I chose to go." (Tr. 78.)

Her own summary of the causal chain could not be clearer. She was asked: "So the reason you traveled to Florida was your decision and the lies that you told Ron?" She answered: "Yes." (Tr. 79.) When asked whether nobody forced her to go to the airport, get on the flight, or come to Florida, she answered no to each. (Tr. 79.) When asked whether there were only two ways this trip could have been stopped — she could have told the truth and Frankel would have called it off, or she could simply have chosen not to come — she confirmed both. (Tr. 79.)

The $1,000 did not transport the complaining witness to Florida. The complaining witness transported herself to Florida, through a months-long, methodical campaign of deception that she constructed, executed, and, when given a final opportunity to abandon, chose to see through. Under any legally cognizable standard of causation, that chain of free, deliberate, and informed choices by the person the statute exists to protect is not the downstream consequence of anything Mr. Frankel did. It is a superseding cause that severs his causal responsibility entirely.

On this record, the complaining witness' own testimony defeats the government's causation theory. She testified that she received $1,000 from Mr. Frankel to purchase a ticket — and she further admitted that she could have kept

the money and not gone. That admission is dispositive. If she could have kept the money and not traveled, then the money was not a but-for cause of her travel. Her choice to go — not the transfer of funds — was the cause of the interstate journey. The government cannot satisfy *Burrage's* demanding but-for standard when the alleged victim herself testifies that the trip was within her own discretion to take or decline.

### C. The Complaining Witness' Multilayered Deception Constitutes a Superseding Cause That Severs Any Causal Chain.

Even setting aside but-for causation, the complaining witness' conduct independently breaks any proximate causal link between Mr. Frankel's conduct and her travel. Proximate causation requires that the harm be a foreseeable result of the defendant's actions. A defendant's causal responsibility is cut off when an intervening actor makes "a free, deliberate, and informed" choice that produces the result. *See* LaFave, supra § 6.4(c).

Here, the minor engaged in systematic, affirmative deception at every stage. She falsified her age on a dating application. She obtained and used a fraudulent identification document. She lied directly to Mr. Frankel about who she was. A person who is deceived about the basic facts of a situation — including the age and identity of the person with whom he is dealing — cannot be the proximate cause of results that flow from that deception. The law does not hold a defendant responsible for harms that materialize only because another person independently chose to lie her way into the situation and independently chose to follow through. *See generally Burrage*, 571 U.S. at 217-18 (cautioning against broad causation standards because

"[u]ncertainty of that kind cannot be squared with the beyond-a-reasonable-doubt standard applicable in criminal trials").

The government's theory, taken to its logical end, would impose criminal liability on a person who provides money to someone who claims to be an adult, who uses forged documents to confirm that claim, who independently books travel, who independently selects an itinerary, and who — when counseled by her own peer not to go — chooses to go anyway. That is not causation. That is an after-the-fact search for someone to hold responsible for choices that belonged entirely to another person.

### D. The Government's "Contributing Cause" Theory Is Legally Insufficient.

To the extent the government argued at trial that Mr. Frankel's transfer of funds was a "contributing cause" of the minor's travel, that theory is foreclosed by *Burrage*. The Supreme Court unanimously rejected contributing-cause as the operative standard for federal criminal liability, holding that Congress knows how to write a contributing-cause standard and that courts should not import one where the statute's text does not require it. 571 U.S. at 216-17. Contributing cause is not enough. A payment that the alleged victim admits she could have pocketed and never acted upon is, at most, a background condition — not the "independently sufficient" or "but-for" cause that federal criminal law demands.

Moreover, the rule of lenity independently forecloses the government's expansive reading of causation. Even if one could read § 2423(a)'s "transports" to encompass causation (which it does not), any ambiguity about how demanding that causation standard must be resolved in Mr. Frankel's favor. *Santos*, 553 U.S. at 514.

The most demanding available causation standard — but-for and proximate — applies, and the government did not meet it.

### E. *Paroline* Confirms That Defendants Are Liable Only for the Consequences of Their Own Conduct — Not the Independent Choices of Others.

During the charge conference of this case, the Court cited *Paroline v. United States*, 572 U.S. 434 (2014), and that case reinforces the defense position. In *Paroline*, the Supreme Court grappled with how to assign causation where hundreds of defendants each contributed in some small way to an indivisible harm — the ongoing psychological trauma suffered by a child pornography victim from knowing her images circulated on the internet. The Court rejected both strict but-for causation (because no single possessor could be shown to have independently caused the harm) and the government's preferred "aggregate causation" theory (because it would hold each possessor liable for the entirety of the victim's losses caused by thousands of others). What the Court endorsed instead was a proportionality principle grounded in proximate cause: a defendant is answerable for consequences that bear a "sufficient connection" to his own conduct, not for results produced primarily by the actions of others.

Three aspects of *Paroline* bear directly on this case. First, the Court reaffirmed that proximate cause in criminal statutes demands more than factual connection — it requires that the link between conduct and result not be "so attenuated that the so-called consequence is more akin to mere fortuity." 572 U.S. at 448. A transfer of $1,000 to someone who — by her own testimony — could have pocketed the money

and stayed home is, at best, a background condition. The trip happened because she chose to make it happen, not because the money compelled her. That is precisely the kind of attenuated, fortuitous causal link that *Paroline* says is insufficient.

Second, and most importantly, the Court held that defendants should be held accountable "for the impact of their conduct," not "the conduct of others." *Paroline*, 572 U.S. at 462. In this case, the conduct that actually drove the interstate travel was the minor's own: she chose the destination, chose the dates, booked the ticket, lied to everyone who might have stopped her, and proceeded over the explicit objection of a friend who knew the truth. Those choices belong to her. Mr. Frankel cannot be held criminally responsible for the downstream consequences of another person's free and deliberate decision-making.

Third, the *Paroline* Court specifically cautioned against "aggregate causation logic" in criminal statutes where Congress has not expressly provided for it, citing *Burrage* for the proposition that courts should be reluctant to adopt such theories when "there is no language expressly suggesting Congress intended that approach." 572 U.S. at 453. The government's theory here is precisely the kind of aggregate causation theory *Paroline* condemned: it seeks to combine Mr. Frankel's $1,000 transfer with the minor's own travel decisions and call the combination sufficient causal proof. But § 2423(a) contains no aggregate causation language, no contributing-cause language, and no language suggesting that a defendant's attenuated financial involvement suffices when the person who actually traveled made every material decision herself. Under *Paroline*, that theory fails.

## CONCLUSION

The Court should enter a judgment of acquittal. The government conceded it did not prove transportation. The charged statute does not criminalize causing someone to be transported. But even if the Court considers causation, the government failed to prove causation under any legally cognizable standard. The complaining witness' own free, deliberate, and multiply-deceptive choices were the but-for and proximate cause of her interstate travel. Mr. Frankel's conditional transfer of funds — which the witness herself admits she could have kept without traveling — was at most a contributing background factor, which *Burrage* holds is legally insufficient. Judgment of acquittal is required.

Respectfully submitted,

**MARKUS/MOSS PLLC**
40 N.W. Third Street, PH1
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

By:     /s/ David Oscar Markus
        David Oscar Markus
        Florida Bar Number 119318
        dmarkus@markuslaw.com

        /s/ Lauren Field Krasnoff
        Lauren Field Krasnoff
        Florida Bar Number 86951
        lkrasnoff@markuslaw.com

        /s/ Lauren Doyle Perez
        Lauren Doyle Perez
        Florida Bar Number 117687
        ldoyle@markuslaw.com