**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO: 26-80003-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

RONALD ALAN FRANKEL,

      Defendant.

_____/

## ORDER GRANTING MOTION FOR JUDGMENT OF ACQUITTAL

**QUESTION/NOTE FROM THE**
**JURY TO THE COURT**

Could you clarify why the word "cause" is part of the clarification on p. 8 of our instructions (appears 2nd line, 3rd #)?

Does the word indicate that the defendant has to be the sole cause of her transport to be guilty? Or is it there to show the defendant doesn't have to literary transport her?

Almost 250 years since our country's founding, the trial by jury has remained "the creed of our political faith." Thomas Jefferson, *First Inaugural Address*, National Archives (March 4, 1801).

The instant case of *United States v. Ronald Alan Frankel* is a testament to the attentiveness and collective skill of juries, and the benefit of this central tenant of our government. This case

was tried in just two days, beginning on February 23, 2026, and ending on February 25, 2026. (DE 57, DE 63). The one-count Indictment charged Mr. Frankel with transporting a minor based upon his having sent a seventeen-year old girl who he met on a dating app $1,000 to travel from Iowa to Florida in order to have sex, in violation of 18 U.S.C. § 2423(a). (DE 21).

Upon receiving their instruction on the law, the jury was quick to identify one of the core issues of this case: the idea of "cause" as used in the current Eleventh Circuit pattern offense instruction, which states that a defendant can be found guilty without directly transporting the victim if he "caused" the transportation to occur. *See* O93.1, Transportation with Intent to Engage in Criminal Sexual Activity, 18 U.S.C. § 2423(a).

Following a hung jury and my declaration of a mistrial, Mr. Frankel filed a Motion for Judgment of Acquittal on March 3, 2026. (DE 78). The Motion is fully briefed (DE 85, DE 88). and I heard oral argument on April 3, 2026. (DE 98).[1] The Motion is now ripe for adjudication, raising a central disputed issue: whether Mr. Frankel "transported" T.F., a minor when he sent her $1,000 for the purpose of enabling her to purchase her flight from Iowa to Florida. Under the Government's theory Mr. Frankel "*caused* [T.F.] to be" transported within the meaning of 18 U.S.C. § 2423(a) by sending her the money. The Government's problem, however, is that its theory is not a viable one on these facts. The statutory language is clear in requiring actual transportation of the victim. The only time that grounds may exist to broaden the scope of criminal liability to "causing" transport is when the facts of a particular case align with aiding and abetting liability principles. And here, because Mr. Frankel cannot be guilty of aiding and abetting T.F. in her own transportation, the evidence adduced at trial was not sufficient to sustain a conviction under § 2423(a), and judgment of acquittal is warranted.

---

[1] Mr. Frankel filed a Notice of Supplemental Authority on April 6, 2026. (DE 99).

## I.      Background

The one-count Indictment in this case charges Mr. Frankel with transporting a minor, in violation of 18 U.S.C. § 2423(a). (DE 21).

Mr. Frankel, who at the time was 68, is accused of having a sexual relationship with T.F., a 17-year-old girl who he met on an online dating platform. T.F. had set up a profile on "Tinder," a dating app for people who are eighteen or older. T.F. was seventeen years old and in high school when she decided to join Tinder. She testified that she was "struggling financially, and… going through a lot" and did not want to ask her mom for any money. At the time, T.F. explained that her mom was facing Stage three cancer and undergoing treatment. T.F. came across the idea of using Tinder after coming across a video on the popular short-form content app, "TikTok." The video suggested that individuals could make money by creating a Tinder and setting up a profile geared towards "matching" with a "sugar-daddy," a relationship dynamic where an older man will typically spoil a younger woman with gifts and a lavish lifestyle as part of their relationship. Accordingly, T.F. created a Tinder by setting her age as eighteen and posting pictures of herself under the pseudonym "Scarlet." T.F.'s profile also indicated that she was interested in men aged "35 to 70."

After both Mr. Frankel and T.F. "swiped right" on each other, signifying a match, the two began to message. T.F. sent a "wave" emoji and Mr. Frankel responded with "[i]f you want face time fun for money text me at this number." T.F. testified that in their first call, Mr. Frankel gave T.F. a lecture about the age of consent and explained to T.F. that it would be important that she tell the truth. After re-affirming that she was eighteen years old, the two began facetiming regularly, with both Mr. Frankel and T.F. initiating calls.  T.F. testified that they would have conversations on topics such as her fictional college classes while she performed sexual favors done at Mr. Frankel's request. These favors ranged from T.F. removing her clothing to other, more

obscene, actions such as pleasuring herself with objects. According to her testimony, the two had somewhere between ten and fifteen calls, where Mr. Frankel would pay T.F. $100 dollars for about ten minutes, with calls lasting no longer than 30 minutes. These monetary transactions were conducted via Venmo, an app which enables electronic funds transfers between individuals.

T.F. testified that after the two had engaged in a few facetime sessions, Mr. Frankel raised the idea of T.F. traveling to Florida to meet him in person. Mr. Frankel offered her $5,000, a laptop, a shopping spree, and photo shoots. T.F. testified that she was reluctant about meeting Mr. Frankel in person, but these things appealed to her, and so she ultimately agreed.[2] T.F. explained that she needed her mother's approval, however, and communicated this to Mr. Frankel as being a possible obstacle. Mr. Frankel told T.F. to tell her mom that she was staying with a friend in Florida. Mr. Frankel also told T.F. to give her mom his phone number, The plan was that if T.F.'s mother called, Mr. Frankel would pretend to be the uncle of T.F.'s fictitious Florida friend.

At this point, Mr. Frankel offered to book T.F.'s plane ticket, but T.F. testified that she could not let him do so because, in booking the ticket, Mr. Frankel would be required to enter her true birth date, which would alert him of her actual age. At some point in this exchange, Mr. Frankel asked T.F. to send him a photo of her driver's license. T.F. then searched Google for

---

[2] T.F.'s testimony was somewhat contradictory regarding her willingness to travel to Florida. For instance, after Mr. Frankel sent T.F. $1000 to purchase a plane ticket, she sent a screenshot of the transaction to a friend, who suggested that T.F. should "Take [the money] and run," rather than actually go through with traveling to Florida to meet him. (DE 81-3 at 5). T.F. responded "Nah" and "YOLO" (an acronym for the popular phrase "You Only Live Once"). When questioned about the comment, she responded that this was simply the way she and her friend talked, suggesting that it didn't signify any enthusiasm about the trip. Similarly, T.F. posted on social media about her trip to Florida, including photos of herself and of the items Mr. Frankel had bought for her. When questioned about these posts and about why she kept the gifts, T.F.'s answers suggested that she was insecure, lacking self-esteem, and attempting to project a certain image of herself to her peers. *See* Transcript of T.F., Cross Examination ("I wanted people to see that I was happy and that I had things, even though I didn't.").

instructions regarding how to digitally alter an identification document. She successfully doctored her Iowa driver's license to change the year of her birth from 2007 to 2006, making her appear to be eighteen.[3]

Aside from her motivation to conceal her true age, T.F. testified that another reason she wanted to book the flight herself was so that she could choose an itinerary that would minimize the amount of time spent in Florida (and hence the amount of time spent in personal contact with Mr. Frankel). Specifically, T.F. wanted to arrive late in the day on a Friday and depart early in the day on a Sunday. As the two were discussing her trip to Florida over the course of about four days, they sent numerous screenshots back and forth, brainstorming potential dates and times for flights. (DE 81-1 at 12-16; 29-33; 42-44).

In their initial discussion regarding flights, Mr. Frankel texted T.F. with a potential flight and stated "I feel very strongly you should take these flights" in lieu of T.F. driving to Minneapolis and flying from there (DE 81-1 at 3, 4). When T.F. sent another flight option, Mr. Frankel replied by saying "I do not like that flight. The connect time is to[*sic*] short" before pleading with her to cancel that flight and book the flight he suggested (*Id.* at 29). T.F. agreed to cancel the flight, but identified a different flight option before stating "This is probably the best one I can do." (*Id.* at 33). Once T.F.'s mom approved the trip (in between Mr. Frankel and T.F.'s back and forth about flights) Mr. Frankel sent T.F. $1,000 via Venmo to purchase her ticket. Notably, the cost of the ticket was less than $1,000. T.F. paid for it using her own bank debit card, but she did not return

---

[3] T.F.'s testimony at trial suggests that Mr. Frankel would have ended his communications with her if he were to have learned that she was 17. Indeed, other testimony at trial supports this conclusion. For example, in the aftermath of T.F.'s visit to Florida, the Federal Bureau of Investigation set up an undercover sting operation, where the undercover pretended to be the T.F.'s friend and pretended to be seventeen years old. Mr. Frankel asked her how old she was, and immediately upon learning her age, Mr. Frankel wrote back "I cannot talk to a seventeen-year-old" before explaining to her that she should text him again when she is eighteen.

the difference in cost to Mr. Frankel. Mr. Frankel organized T.F.'s transportation from the airport to his house. Upon her arrival to Florida, he had sex with her, paid her, and bought her gifts.

## II.     Procedural Posture and Legal Standard

Mr. Frankel's jury trial began on February 23, 2026. The presentation of evidence took less than a day. The jury deliberated for nearly twice that long. The jury sent back multiple notes with questions, including the one at the opening of this Order. (DE 60, DE 61, DE 62, DE 65, DE 66, DE 68, DE 69). Ultimately, the jury was unable to reach a unanimous verdict. As a result, I declared a mistrial on March 25, 2026. (DE 65).

Mr. Frankel has now filed a Motion for Judgment of Acquittal, arguing that the Government has failed to prove an essential element of 18 U.S.C. § 2423(a). The elements of that offense are (1) the Defendant knowingly transported T.F. in interstate commerce, (2) at the time of the transportation, T.F. was less than 18 years old; and (3) at the time of the transportation, Defendant intended that T.F. would engage in unlawful sexual activity. Mr. Frankel takes issue with the first element, that he "transported" T.F. (DE 78 at 1).

"In considering a motion for the entry of judgment of acquittal under Federal Rule of Criminal Procedure 29(c), a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction." *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999) (citing *United States v. Sellers*, 871 F.2d 1019, 1020 (11th Cir.1989)). The Eleventh Circuit has explained that the "district court must view the evidence in the light most favorable to the government… resolve any conflicts in the evidence in favor of the government… and must accept all reasonable inferences that tend to support the government's case" to ultimately ascertain whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

The Government's Response to the Motion argues that Mr. Frankel's actions constitute "causation" which, they suggest, is inherently contemplated under 18 U.S.C. § 2423(a)'s definition of "transport." To further support its argument, the Government points to the applicable Eleventh Circuit Pattern Jury Instruction, which states: "To 'transport in interstate commerce' means to move or carry someone, **or cause someone to be moved or carried**, from one state to another." 11th Cir. Pattern Jury Instruction O93.1; Docket Entry 64 (Court's Instructions to the Jury) (emphasis added). The Government states that it relied upon the pattern instruction in framing its theory of prosecution and marshalling its evidence at trial. As it turns out, this reliance was misplaced.  A review of the statute, its history, and the incorporation of 18 U.S.C. § 2 suggests that both the Government's theory and the pattern instruction are incorrect. Applying § 2 principles to these facts, I find that the evidence adduced at Mr. Frankel's trial could not support his conviction for transporting a minor under 18 U.S.C. § 2423(a) because the element of "transport" is not met.

### III.    Statutory Framework

### A.  18 U.S.C. § 2423(a)

The starting point in interpreting a statute is the language of the statute itself. *United States v. Rush*, 874 F.2d 1513, 1514 (11th Cir. 1989). But here, the text of the current version of the statute does not give the full story, as its evolution spans over 100 years and includes several important amendments. Therefore, it is necessary to treat this starting point – the language – with some depth. After examining the statutory scheme and studying how these laws evolved, it becomes clear that the present statute centers on a narrower scope of unlawful activity than its predecessors.

Title 18 U.S.C. § 2423(a) reads as follows:

> A person who knowingly **transports an individual** who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual

> activity for which any person can be charged with a criminal
> offense, shall be fined under this title and imprisoned not less than
> 10 years or for life.

18 U.S.C. § 2423(a) (emphasis added). As the Government itself made clear during its closing

argument, it cannot be said that Mr. Frankel, himself, "transported" T.F. The Government was

proceeding under a different theory. First it conceded that Mr. Frankel did not physically transport

T.F., stating "he didn't fly the plane… No one is saying he flew the plane… Transport means to

move or carry someone. He didn't move or carry her…." By the statute's plain text and the

Government's concession, Mr. Frankel could not have *physically* transported T.F.

Yet, the jury instruction makes a stark deviation from the direct text of the statute. The

pattern instruction, O93.1, Transportation with Intent to Engage in Criminal Sexual Activity, 18

U.S.C. § 2423(a), reads as follows:

> To "transport in interstate commerce" means to move or carry
> someone, *or cause someone to be moved or carried, from one state*
> *to another*.

(DE 64 at 8 (emphasis added)). The annotations accompanying the pattern instruction make no

reference to causation. And, as is evident by the above, turning to the statute yields the same result.

It bears emphasizing here that the Eleventh Circuit Pattern Jury Instructions are not meant to be

definitive statements of the law, and the Eleventh Circuit does not endorse the accuracy of an

instruction in allowing it to be published. It is also worth noting that a review of the other pattern

offense instructions for this crime, as promulgated by the Eighth, Sixth, Ninth, and Seventh

Circuits, as examples, make no reference to causation. Causation, therefore, plays a curious role

in this case, and the jury was correct to quickly question its application. Having now studied the

evolution of the statutory scheme here and understanding how the law developed, I am convinced

that the inclusion of "cause" is an incorrect statement of the law, relying on a version of the statute

that no longer reflects its existing application.

**B. Developments in the language of the text and the statutory scheme over time.**

"Causation" was an idea originally contemplated by the Mann Act when it was first enacted, but eventually it was rendered redundant by the introduction of 18 U.S.C. § 2. Crucially, 18 U.S.C. § 2 aiding and abetting applies more narrowly than does a broad understanding of "causation."

**1910.** Formerly the "White Slave Traffic Act," the Mann Act first made it illegal to transport women across state lines for "immoral purposes." *See* White-Slave Traffic Act of 1910, ch. 395,§ 2, 36 Stat. 825, 825 (1910). The Act, in relevant part, provided for separate charges under section 2, section 3, and section 4. Section 2, focusing on the transportation of the woman or girl, covered any person "who shall knowingly transport or cause to be transported, or aid or assist in obtaining transportation for any woman or girl."[4] *Id.*

Section 3, focusing on the act of inducement itself, covered any person "who shall knowingly persuade, induce, entice, or coerce, or cause to be persuaded, induced, enticed, or coerced, or aid or assist in persuading, inducing, enticing, or coercing, any woman or girl to go from one place to another…"[5]

---

[4]  [A]ny person who shall knowingly transport or cause to be transported, or aid or assist in obtaining transportation for, or in transporting, [in interstate commerce] … any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice; or who shall knowingly procure or obtain, or cause to be procured or obtained, or aid or assist in procuring or obtaining, any ticket or tickets … in going to any place for the purpose of prostitution or debauchery, or for any other immoral purpose … shall be punished … by imprisonment of not more than five years….

[5]  Any person who shall knowingly persuade, induce, entice, or coerce, or cause to be persuaded, induced, enticed, or coerced, or aid or assist in persuading, inducing, enticing, or coercing, any woman or girl to go from one place to another … for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose on the part of such person that such woman or girl shall engage in the practice of prostitution or debauchery, or any other immoral practice, whether with or without her consent, and who shall thereby knowingly cause or aid or assist in causing such woman or girl to go and to be carried or transported as a passenger upon the

Finally, Section 4, with a particular focus on women and girls under the age of eighteen, centers on her inducement and transportation, covering any person "who shall knowingly persuade, induce, entice, or coerce any woman or girl under the age of eighteen years … and shall in furtherance of such purpose knowingly induce or cause her to go and to be carried or transported…."[6]

Notably, Section 4 expressly contemplated that a defendant could be found guilty where he knowingly persuaded, induced, or enticed a girl under the age of eighteen to engage in immoral behavior, *and in furtherance of that purpose*, knowingly induced or caused her to be transported. Certainly, the latter half of that section intimated some level of distant causation.

**1948.** The language of the Act was first substantively amended in 1948. What was formerly Section 2 became Section 2421; Section 3 became 2422; and Section 4 became 2423.

Section 2421, titled "Transportation generally" read similarly to section 2 to cover any person  who "knowingly transports" any woman or girl and additionally covered any person who "knowingly procures or obtains any ticket or tickets, or any form of transportation…."[7]

---

line or route of any common carriers … shall be punished … by imprisonment for a term not exceeding five years….

[6] [A]ny person who shall knowingly persuade, induce, entice, or coerce any woman or girl under the age of eighteen years from any State or Territory … to any other State or Territory … with the purpose and intent to induce or coerce her, or that she shall be induced or coerced to engage in prostitution or debauchery, or any other immoral practice, and shall in furtherance of such purpose knowingly induce or cause her to go and to be carried or transported as a passenger in interstate commerce upon the line or route of any common carrier or carriers … shall be punished … by imprisonment for a term not exceeding ten years.…

[7] Whoever knowingly transports … any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice; or

Whoever knowingly procures or obtains any ticket or tickets, or any form of transportation … to be used by any woman or girl … in going to any place for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent or purpose on the part of such

Section 2422, titled "Coercion or enticement of female" also read similarly to Section 3 of the 1910 Act to cover any person who "knowingly persuades, induces, entices, or coerces any woman or girl to go from one place to another…."[8]

Before discussing the next section, however, there is a notable difference between the 1910 and 1948 versions of the Act with respect to these two sections. Title 18 U.S.C. § 2, titled "Principals" was first established in 1948, and provided for aiding and abetting liability. As a result, whereas the 1910 Act included language such as "cause to be transported" or "cause to be persuaded," the Reviser's Note to the Act indicates that with respect to Section 2421 and 2422, "Reference to persons causing, procuring, aiding or assisting was deleted as unnecessary because such persons are made principals by section 2 of this title." Section 2423, building off Section 4, did not include the same Reviser's Note. Section 2423 read as follows:

> Whoever knowingly persuades, induces, entices, or coerces any woman or girl who has not attained her eighteenth birthday, to go from one place to another by common carrier .. with intent that she be induced or coerced to engage in prostitution, debauchery or other immoral practice, shall be … imprisoned not more than ten years….

Despite not containing similar Reviser's Note language, this Section similarly removes the "*or cause her to go and to be carried or transported* as a passenger in interstate commerce."

---

person to induce, entice, or compel her to give herself up to the practice of prostitution, or to give herself up to debauchery, or any other immoral practice…. [s]hall be … imprisoned not more than 5 years….

[8] Whoever knowingly persuades, induces, entices, or coerces any woman or girl to go from one place to another … for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose on the part of such person that such woman or girl shall engage in the practice of prostitution or debauchery, or any other immoral practice, whether with or without her consent, and thereby knowingly causes such woman or girl to go and to be carried or transported as a passenger upon the line or route of any common carrier or carriers … shall be … imprisoned not more than five years, or both.

Presumably, even without the Revisor's Note, Section 2 had a role to play in the alterations to Section 2423.[9]

**1978.** Section 2423 underwent a major revision in 1978. Instead of targeting anyone who knowingly persuades, induces, entices, or coerces any minor, it centered on any person who "transports, finances in whole or part the transportation of, or otherwise causes or facilitates the movement of, any minor."[10]

---

[9] A lingering question remains as to why the 1948 Revisor's Note felt the need to clarify the incorporation of Section 2 into Sections 2421 and 2422, but not Section 2423. As it relates to Section 2421, the 1910 version first used language making it a crime to "aid and assist in transporting" or "cause to be transported." Similarly, the 1910 version of Section 2422 used language making it a crime to "cause to be persuaded" or "aid or assist in persuading." As the First Circuit explains in *United States v. Sabatino*, the enactment of Section 2 permitted such language "to be deleted from a variety of substantive offenses, such as the Mann Act." 943 F. 2d 94, 99 (1st Cir. 1991). The 1910 version of Section 2423 also contained language making it a crime for a person to, in furtherance of the immoral purpose, "knowingly induce or cause" the victim to be transported. It is not entirely clear why this language did not warrant a Revisor's note, but its ultimate removal in the 1948 version suggests that Section 2 nevertheless has a role to play in 2423. *See also United States v. Doak*, 47 F. 4th 1340 (11th Cir. 2022) (applying 18 U.S.C. § 2 in the context of 18 U.S.C. § 2423).

[10] "(a) Any person who transports, finances in whole or in part the transportation of, or otherwise causes or facilitates the movement of, any minor in interstate or foreign commerce, or within the District of Columbia or any territory or other possession of the United States with the intent—

(1) That such minor engage in prostitution; or

(2) That such minor engage in prohibited sexual conduct, if such person so transporting, financing, causing, or facilitating movement knows or has reason to know that such prohibited conduct will be commercially exploited by any person;

shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

12

**1986.** Still, this is not the end of the road. The 1986 Amendments to these Sections and accompanying legislative history offer important insights. As a preliminary matter, the 1986 Amendments extended the statute to minor boys and removed vague language such as "for any immoral purpose" with "any sexual activity for which any person can be charged with a criminal offense."

Additionally, Section 2421 was amended to remove the provision specifying liability for procuring a ticket, reading only to cover any person who "knowingly transports any individual…."[11] The legislative history explains that the amendment deletes the ticket procurement provision because it is "unnecessary" as "[t]his conduct would constitute aiding and abetting the commission of the offense and thus a person who engages in such conduct would be treated as a violator of the Mann Act offense by [S]ection 2." 1986 U.S.C.C.A.N. 5952, 5958.

Section 2422 removed the language "and thereby knowingly causes such woman or girl to go and to be carried or transported as a passenger" to cover any person who "knowingly persuades, induces, entices, or coerces any individual to travel…."[12]

Section 2423, meanwhile, underwent yet another major transformation from the 1978 Amendment, effectively scrapping the changes made in 1978 and reverting back to the 1948 version. Yet, unlike the 1948 version, the 1986 Section 2423 removed the "persuades, induces,

---

[11]  Whoever knowingly transports any individual … with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be … imprisoned not more than five years…

[12]  Whoever knowingly persuades, induces, entices, or coerces any individual to travel … to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be … imprisoned not more than five years.

entices, or coerces" simply for "transports" so that, like Section 2421, it covered any person who "knowingly transports any individual" with a particular focus on individuals under the age of 18.[13]

### C.  The Current Statutory Framework

Since 1986, several amendments have produced the Sections in their current forms, which include mandatory minimums and other notable changes. Today, Section 2421 reads as:

> Whoever knowingly transports any individual … with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

Section 2422, in addition to the general persuasion and enticement language adds language aimed at protecting individuals who have not yet attained the age of 18 years:

> (a)  Whoever knowingly persuades, induces, entices, or coerces any individual to travel … to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be … imprisoned not more than 20 years…..
>
> (b)  Whoever, using the mail or any facility or means of interstate or foreign commerce … knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be … imprisoned not less than 10 years or for life.

Section 2423 has been expanded to include several subsections, with Subsection (a) here as the basis for the indictment. This section reads:

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal

---

[13] Whoever knowingly transports any individual under the age of 18 years … with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be … imprisoned not more than ten years….

offense, shall be fined under this title and imprisoned not less than 10 years or for life.

## IV.    Discussion

### A.  Statutory Interpretation

The legislative history, particularly with respect to Section 2423, reveals a fluctuating standard. What began as a 1910 statute targeting the persuasion of a minor such that it induces or causes that minor to be transported later became the 1948 statute that concerned itself only with whether the defendant knowingly persuaded, induced, or enticed the minor victim to travel. This appears to closely mirror the language contained in Section 2422(b). In 1978, the statute was amended to target commercial exploitation and those to provided financial support to the individual's transportation. In 1986, however, the 1978 language was seemingly abandoned and ultimately, so too, was the earlier persuasion language, leaving only "transports."

As an initial matter, the history of the Mann Act cuts against a key argument by the Government. At the hearing on the instant Motion, the prosecutor argued that the natural, commonsense reading of the term "transportation" incorporates the idea of *causing* transportation to occur without direct or active participation in the physical transport. But the amendments to the Mann Act evidence a clear conceptual distinction between "cause to be transported" and the term "transportation" because "cause" was subsumed by Section 2.

Section 2, titled "Principals" reads as follows:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

A key question concerns the scope of causation in Section 2 with respect to its application in Section 2423. Since 1986, the language "persuades, induces, entices, or coerces" has been

removed in place of "transports." But it would be incorrect to assume that this is because persuasion and those similar actions were subsumed within Section 2's causation principles under either Section 2(a) or 2(b)..[14] Instead, I find that these concepts – persuasion and inducement – are not within the ambit Section 2 for the same reason that the U.S. Court of Appeals for the D.C. Circuit in *United States v. Jones* held that "inducement" does not fit within the language of Section 2421. In *Jones*, Judge Ginsberg correctly rejected the Government's contention that "inducement" fits within the scope of "caus[ing] her to be transported" under Section 2421 because inducement "better fits the description of a different and complementary offense," pointing to Section 2422. The DC Circuit concluded that "If § 2421 is interpreted so broadly as to encompass inducement, then § 2422 would be redundant." 909 F. 2d 533, 540 (DC Cir. 1990). The Court continued:

> The more felicitous rendering preserves a role for each section by confining § 2421 to cases in which the defendant can truly be said, personally or through an agent, to have performed the proscribed act of transporting; § 2422 covers those cases in which the defendant provides the motivation, ranging from persuasion to coercion, but the person then 'travels' under her own steam, without need of anyone to 'transport' her. This reading preserves the ordinary language, common-sense meaning of the distinction between 'causing' and 'inducing' unlawful transportation.

*Id.*[15]

---

[14] I note that the Ninth Circuit in *U.S. v. Johnson*, 132 F.3d 1279, 1285 (1997) attempts to explain this change by pointing to the congressional record. There, the Ninth Circuit explains that "the legislative history expressly indicates that the persuasion and inducement language could be eliminated because such acts were covered by 18 U.S.C. § 2(b)." *Id.* (referencing 1986 U.S.C.C.A.N. 5952). But the Ninth Circuit is incorrect. Their citation does not point to any language for such a significant interpretation, let alone an "express[] indication." *Id.*

[15] To be sure, by 1986, § 2422 appears to also have expanded in scope. Whereas in 1910 and 1948, the language of the statute required that the victim ultimately be transported, the 1986 version of the statute removes this language—criminalizing the persuasion or enticement alone. *See e.g., United States v Hornaday*, 392 F. 3d 1306 (11th Cir. 2004) (reviewing a conviction where the victim never travelled).

Here too, Section 2422 would be rendered redundant by reading into Section 2423 the terms "persuasion and inducement" as fitting within the scope of causation under Section 2. In fact, this is even more apparent upon review of Section 2422 in its current form. Amended in 1998, Section 2422 now specifically targets any person who "using … means of interstate … commerce … knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years" to engage in illicit sexual behavior.[16]

My conclusion that "persuasion and inducement" plays no role in Section 2423(a) liability is further buttressed by the additional subsections present in Section 2423. Most relevant here is Section 2423(e) titled "Ancillary offenses." This subsection, unlike Section 2423(a) reintroduces the terms "induces" and "facilitates." Their presence in Section 2423(e) suggests that Congress made deliberate choices to include these terms when and where it chose to do so. Accordingly, the absence of these terms in Section 2423(a), where both terms were once present, is significant. Further, the 1948 amendments to the Mann Act provisions in light of Section 2 removed causation language but kept the "persuasion and enticement" language in both Sections 2422 and Section 2423 suggests that a meaningful distinction exists between theories of causation and persuasion, inducement, and enticement.

Because 18 U.S.C. Section 2 is the only means of incorporating liability premised upon causation, I find that Mr. Frankel could not have caused T.F.'s transportation. His $1,000 in financial support, the $5,000 payment upon T.F.'s arrival, the new laptop he bought her, or the shopping spree could serve only as persuasion or enticement, at best. But because these concepts fall outside the scope of causation incorporated into Section 2423 by means of Section 2, the evidence cannot reasonably support a finding that Mr. Frankel violated Section 2423(a).

---

[16] Although superfluous language is not fatal, its application here is undermined by the fact that the penalty provisions under Sections 2422(b) and 2423(a) are identical.

## B.  Application of Aiding and Abetting Principles.

Moreover, even applying Section 2, the Government's evidence falls short of sustaining Mr. Frankel's conviction as an aider or abettor. "Aiding and abetting is not a separate federal crime, but rather an alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense." *United States v. Sosa*, 777 F. 3d 1279, 1292 (11th Cir. 2015) (internal quotation and citation omitted). "Under an aiding and abetting theory, the government must prove that the defendant in some way associated himself with the criminal venture, that he wished to bring it about, and that he sought by his actions to make it succeed." *United States v. Broadwell*, 870 F.2d 594, 608 (11th Cir.1989). Thus, to convict under a theory of aiding and abetting, the government must prove that (1) someone committed the substantive offense; (2) the defendant contributed to and furthered the offense; and (3) the defendant intended to aid in its commission. *United States v. Tagg*, 572 F.3d 1320, 1324 (11th Cir.2009). Put simply, "a person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65 (2014).

As an initial matter, the Government concedes that it never pursued or presented an aiding and abetting theory of liability to the jury, and did not even consider such a theory as being at play at trial at all. Indeed, the Government's proposed jury instructions did not make any reference to aiding and abetting.  "Aiding and abetting need not be specifically alleged in the indictment; assuming the evidence supports it, the accused can be convicted of aiding and abetting *so long as the jury is instructed on it*." *United States v. Seabrooks*, 839 F. 3d 1326, 1333 (11th Cir. 2016) (citing *United States v. Martin*, 747 F. 2d 1404, 1407 (11th Cir. 1984). Though my review is limited to the sufficiency of the evidence, the Government's lack of preparation for aiding and abetting liability is further illustrative of the dearth of facts supporting such a finding.

18

Still, even in application, the evidence adduced at trial is insufficient to find Mr. Frankel guilty of sex trafficking via 18 U.S.C. Section 2. When assessing whether Mr. Frankel may be guilty of aiding and abetting a violation of Section 2423(a), transporting a minor in interstate commerce for the purposes of engaging in unlawful sexual behavior, two questions must be answered: (1) *who* did Mr. Frankel aid and abet? And (2) was Mr. Frankel's conduct *willful*? I focus here only on the first question.[17]

The central issue in determining who Mr. Frankel could have aided and abetted is whether the person transported may simultaneously play the role of the person committing the substantive offense. When the issue is so framed, it becomes clear that Mr. Frankel cannot be capable of aiding and abetting T.F. based on principles drawn from Supreme Court precedent and the reasoning of Circuit Courts of Appeals, which have confronted similar issues. In *United States v. Gebardi*, the Supreme Court considered the convictions of a man and a woman who were indicted for conspiring

---

[17] Were it necessary to reach the second issue, I would view the intent element as requiring proof of knowledge of minor status, *See Rosemond v. United States*, 572 U.S. 65, 77--80 (2014) (explaining that aiding-and-abetting liability requires active participation with "full knowledge of the circumstances constituting the charged offense," such that the defendant can choose to alter or withdraw from the scheme, and that liability attaches where the defendant knowingly accepts the "heightened stakes" of the offense); *see also Nye & Nissen v. United States*, 336 U.S. at 619 (requiring willful participation in the criminal venture). Applied to 18 U.S.C. § 2423(a), this framework suggests that, although knowledge of a victim's age is not ordinarily required for principal liability, the willfulness requirement for aiding and abetting may demand advance knowledge of facts—such as minority status—that increase the severity of the offense, akin to the enhancement principle recognized in *Rosemond*; but cf. *United States v. Buddi*, 168 F. 4th 439, 448 (6th Cir. 2026) (treating age under § 2423(a) as a penalty-enhancing factor rather than a circumstance of the offense). And, were it necessary to reach the second issue, I would further find that the evidence adduced at trial would likely have been sufficient to raise a jury question as to knowledge. A reasonable jury could conclude that Mr. Frankel was not in fact "duped" into believing that T.F. was a minor, but instead was simply indifferent to that fact and seeking T.F.'s false confirmation of age only to provide a superficial layer of protection of "cover" for himself. I base this conclusion on T.F.'s physical appearance in nude photos (she appeared to be underage), the dynamics involved in their conversations (T.F. made frequent reference to living at home and being subject to the rules of her mom, consistent with a juvenile), and additionally, had Mr. Frankel studied T.F.'s doctored driver's license, he could have discerned her true age due to her failure to modify the "UNDER 21 UNTIL" date to coincide with the forged birth date.

together to transport the woman from one state to another for the purpose of engaging in sexual intercourse with the man under the 1910 version of the Mann Act. 287 U.S. 112, 116 (1932). The court drew several important conclusions. First, the woman in that case, who made no showing that "she purchased the railroad tickets or that [she] was she was the active or moving spirit in conceiving or carrying out the transportation" could not be punished for transporting herself. Instead, the Mann Act "contemplates two persons – one to transport and the woman or girl to be transported. For the woman to fall within the ban of the statute she must, at the least, 'aid or assist' someone else in transporting or in procuring transportation for herself." *Id.* at 119, 120. The second conclusion is that because the woman could not be guilty, the Court also held that she was not guilty of conspiracy to do so, either. As a result, the Court also reversed the conspiracy convictions of the man, as there was "no proof that the man conspired with anyone else to bring about the transportation." *Id.* at 123. Yet, the third conclusion suggested by the Court is that, with respect to the man, who purchased the tickets, "it is not questioned that in transporting her he contravened § 2." *Id.* at 120 (citing *Caminetti v. United States*, 242 U.S. 470, 483 (1917) (affirming the judgment against "the defendant [for] transporting and causing to be transported, and aiding and assisting in obtaining transportation for, a certain woman from Sacramento, California, to Reno, Nevada, for the purpose of debauchery"). In some sense, *Gebardi* therefore suggests that the man *could* have been convicted for transporting under the original Mann Act; of course, he was never indicted under that theory—only conspiracy to do so.

The idea that the person subject to transport may serve as the perpetrator of the substantive offense is not explicitly barred. Arguably, it could fit within the scope of the "innocent intermediary" principles adopted by the Eleventh Circuit.[18] Here, "[a] defendant can be properly

---

[18] The Eleventh Circuit has applied the innocent intermediary principle through 18 U.S.C. § 2(b) as opposed to § 2(a).  *See Walser* 3 F. 3d 380 at 1312, 1313.

convicted as a principal under § 2 even when he has not personally committed all the acts constituting the elements of the substantive crime aided." *United States v. Hornaday*, 392 F. 3d 1306, 1311 (11th Cir. 2004) (internal citation and quotation omitted). The Court later emphasized that "Section 2(b)'s language fits, and is obviously designed for, the situation in which a defendant with the requisite intent to commit a crime gets someone else to act in a way necessary to bring about the crime, even if that person is innocent. Or to put it another way, the defendant supplies the intent and maybe another element or two while getting someone else to supply at least one additional element that is necessary to the commission of the crime." *Id.* at 1313. In *United States v. Walser*, the defendant had another person give testimony under oath that the defendant knew was false, but the testifier did not. The Eleventh Circuit upheld a perjury conviction even where the defendant never actually proffered any testimony. 3 F. 3d 380, 387—89 (11th Cir. 1993).

With these principles in mind, imagine the following hypothetical, which illustrates the appeal in extending the innocent intermediary principle to the victim: A man offers a woman money to help her buy an airplane ticket from Iowa to travel to meet him in Florida. She believes that he is offering her a modeling contract. But the man's goal is more sinister. Unbeknownst to her, the man intends to traffic the woman upon her arrival to Florida. Unknowingly, the woman has completed the most essential element: transportation. It does not seem far fetched to interpret the statute in a manner that protects those who serve as "pawns" against those who "operate" the scheme. *See e.g., United States v. Holland*, 381 F. 3d 80, 85 (2nd Cir. 2004).

This hypothetical presents a difficult scenario. But the great weight of the principles underlying Section 2423 and aiding and abetting liability require a finding that the victim cannot also serve as the perpetrator. As an initial matter, I am unaware of any court, beyond *Johnson*, that has suggested that the innocent intermediary principle could apply to a victim, but instead some

other agent or third party helping to create harm against a victim.[19] Further, as described in *Rosemond v. United States*, aiding and abetting is particularly applied where a defendant makes a choice to join in the actions of a confederate. 572 U.S. 65, 77 (2014). "Aiding and abetting means to assist the perpetrator of the crime." *United States v. Williams*, 341 U.S. 58, 64 (1951). These concepts comfortably still apply where there is a third-party innocent agent—*i.e.*, where the defendant understands that the action of the agent completes the substantive offense. *See Rosemond*, 572 U.S. at 70 ("§ 2 reflects a centuries old view of culpability: that a person may be responsible for a crime he has not personally carried out if he helps another to complete its commission." (citing J. Hawley & M. McGregor, Criminal Law 81 (1899)). But *Rosemond's* guiding principles become skewed when the confederate or perpetrator is also the victim of the crime. Additionally, the relevant innocent intermediary cases have only involved an intermediary who, by committing the actus reus, could be subject to criminal liability. In the context of the Mann Act, the victim is left unpunished. *See Gebardi*, 287 U.S. at 118 ("The Act does not punish the woman for transporting herself; it contemplates two persons – one to transport and the woman or girl being transported."). The Eleventh Circuit's innocent intermediary cases presuppose that the intermediary is functioning as the *instrumentality of the crime*, not its protected object. Here, however, the key distinction is that the intermediary in those cases are not the statutory victim. To hold otherwise would create tension with *Gebardi's* recognition that Congress intentionally

---

[19] The Ninth Circuit's *Johnson* opinion serves as the only example where a court has suggested that the victim may serve as the agent. There, the defendant contacted a regional coordinator for the Education Foundation about serving as a host parent for a foreign exchange student. 132 F.3d at 1281. The defendant expressed interest in hosting a "Nordic boy" and arranged to have a seventeen-year-old Norwegian student, who was originally to have been placed in Minnesota, assigned to the defendant's California home. *Id.* The Ninth Circuit, finding that persuasion and enticement fit within the ambit of Section 2's application to Section 2423 held that "it is enough that Johnson caused the Norwegian minor's transport… even if the entity carrying out the transport-be it the Education Foundation or the minor himself-lacked criminal intent." *Id.* at 1285.

excluded the transported individual from punishment, and with the broader principle that accomplice liability cannot be used to circumvent such legislative choices.

## CONCLUSION

*Why* the Government chose to rely solely on Section 2423(a), without reference to any other potential avenue of liability, is unclear. I posed this question to the prosecutor at oral argument, but he did not seem to know either. Indeed, given the evidence adduced at trial, a number of other statutory provisions would have been a much better fit for these facts, and, in my view, could result in a viable prosecution. For instance, persuasion and enticement of a minor to engage in sexual activity (18 U.S.C. § 2422(b)), or sex trafficking of a child by coercion (18 U.S.C. § 1591), or possession and/or manufacturing child pornography (18 U.S.C. § 2252). But I cannot evaluate Mr. Frankel's conduct by reference to any other statutory provision. And in entering a judgment of acquittal for the offense of transporting a minor, I do not mean to suggest that Mr. Frankel did not commit some other crime, nor should my ruling be interpreted as absolving Mr. Frankel of all criminal responsibility. My limited finding here is simply that the evidence cannot sustain Mr. Frankel's conviction under Section 2423(a).

The Eleventh Circuit Pattern Jury Instruction's inclusion of "cause to be transported" fails to adequately account for the role of aiding and abetting within the existing statutory scheme. What appears to be a statute that may have included a broad idea of causation when originally enacted in 1910 has been fundamentally transformed by its own amendments and the incorporation of 18 U.S.C. § 2. Applying the principles of Section 2 to this case, I conclude that Mr. Frankel could not have aided and abetted the victim, and as a result, the evidence in this case could not support a jury finding that Mr. Frankel is guilty of transporting T.F. under 18 U.S.C. § 2423(a).

23

Based upon the foregoing, it is **ORDERED** that Defendant Ronald Alan Frankel's Motion for Judgment of Acquittal (DE 78) is **GRANTED**.

**SIGNED** in Chambers, at West Palm Beach, Florida, this 22nd day of April, 2026.

Donald M. Middlebrooks
United States District Judge

cc:  Counsel of Record

24